UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------
MICHAEL TWEED,

Plaintiff,

-against-

GLEN COVE CITY SCHOOL DISTRICT,
GLEN COVE SCHOOL DISTRICT BOARD
Of EDUCATION, and MARIA RIANNA, in her
official capacity as SUPERINTENDENT
of SCHOOLS,

Defendants.

-----------------------------------------------------------

14CV4154 (LDW) (WDW)

---------------------------------------------------------------------------------
**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION OF
DEFENDANTS' MOTION TO DISMISS**
---------------------------------------------------------------------------------

School Administrators Association of New York State
Office of General Counsel, Arthur P. Scheuermann
By: Arthur P. Scheuermann
*Attorney for Plaintiff*
8 Airport Park Boulevard
Latham, NY  12110
(518)782-0600

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT……………………………………… 1

BACKGROUND FACTS……………………………………………… 1

STANDARD OF PROOF……………………………………………... 4

ARGUMENT………………………………………………………... 5

    <u>POINT I</u>
    THE FIRST AMENDMENT RETALIATION CLAIM IS VALID………. 5

    <u>POINT II</u>
    PLAINTIFF'S FOURTEENTH AMENDMENT CLAIMS MUST
    SURVIVE THE MOTION TO DISMISS……………………………… 11

    A. Plaintiff has sufficiently alleged an Equal Protection cause
       of action………………………………………………………… 11

    B. Plaintiff has sufficiently alleged a Due Process cause
       of action………………………………………………………… 13

        1.  Due Process Property Interest…………………………… 13

        2. Substantive Due Process………………………………… 14

        3. Stigma Plus……………………………………………… 15

           a.  Deprivation of tangible interest……………………… 16

           b. Lack of adequate due process/Procedural due process…… 16

           c. The publication…………………………………… 17

    <u>POINT III</u>
    THE BOARD OF EDUCATION AND ITS MEMBERS ARE
    "PERSONS" UNDER 1983 AND ARE SUABLE ENTITY……………… 18

**POINT IV**
**THE COURT SHOULD EXERCISE SUPPLEMENTAL**
**JURISDICTION**……………………………………………….…..   **21**

**POINT V**
**THE NEW YORK CIVIL SERVICE LAW § 75-b CLAIM**
**SHOULD NOT BE DISMISSED**………………………………….…..   **22**

**POINT VI**
**THE COURT DOES NOT HAVE TO DISMISS PLAINTIFF'S**
**ARTICLE 78 CAUSE OF ACTION**…………………………………   **23**


**CONCLUSION**……………………………………………………..   **25**

# TABLE OF AUTHORITIES

Cases

Ashcroft v. Iqbal,
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)............................. 4

Batyreva v. New York City Dep't of Educ.,
    19 Misc. 3d 1128(A) (Sup. Ct., N.Y. Cty., 2008) *rev on*
    *other grounds,* 57 A.D.3d 322 (1st Dept. 2008)..................................... 23

Beattie v. Madison County Sch. Dist.,
    254 F 3d. 595 n.2 (5th Cir.2001)..................................................... 18

Bell Atl. Corp. v. Twombly,
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)........................... 4

Benedict v. Town of Newburgh,
    95 F. Supp. 2d 136, (S.D.N.Y. 2000).................................................. 7

Brandt v. Bd. Of Coop. Educ. Servs.,
    820 F.2d 41 (2d Cir. 1987)............................................................. 17

Breithaupt v. Abram,
    352 U.S. 432 (1957).................................................................... 14

Carmody v. Vill. Of Rockville Ctr.,
    661 F. Supp. 2d 299, 337 (E.D.N.Y. 2009) citing Pisello.......................... 14

Cartagena v. City of New York,
    257 F. Supp. 2d 708 (S.D.N.Y. 2003)................................................. 25

Casale v. Metro. Transp. Auth.,
    2005 WL 3466405, at *6 (S.D.N.Y. 2005)........................................... 25

Cave v. East Meadow Union Free School Dist.,
    514 F.3d 240, 250 (2d Cir. 2008)..................................................... 21

Cioffi v. Averill Park Cent. Sch. Dist.,
    444 F.3d 158 (2nd Cir.2006)........................................................... 6, 9

Clark Cnty. Sch. Dist. V. Breeden,
    532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)........................... 9

Connick v. Myers,
    461 U.S. 138 (1983), n. 7 ............................................................. 6

Cortec Indus., Inc. v. Sum Holding L.P.,
    949 F.2d 42, 46-48 (2d Cir. 1991)…………………………………………..    4

Cnty. Of Sacramento v. Lewis,
    523 U.S. 833 (1998) ………………………………………………………    15

Cushing v. Moore,
    654 F.2d 189, 192 (2d Cir. 1981)……………………………………………..    21

Davis v. Goord,
    320 F.3d 346 (2d Cir. 2003)……………………………………………………..    9

Desir v. Bd. Of Coop. Educ. Servs.,
    2008 WL 4508735, at *2 (E.D.N.Y. Sept. 30, 2008)…………………………    20, 21

DiBlasio v. Novello,
    344 F.3d 292 (2d Cir. 2003)……………………………………………………..    15

Donato v. Plainview-Old Bethpage Cent. Sch. Dist.,
    96 F.3d 623, 630-31 (2d Cir. 1996) …………………………………………..    16

Engquist v. Oregon Dep't of Agr.,
    553 U.S. 591 (2008)……………………………………………………………..    11, 12

Espinal v. Goord,
    558 F.3d supra, at 129 (2d Cir. 2009)………………………………………….    9

Faulks v. City of Hartford,
    2010 WL 269076, at *7 (D.Conn. 2010)………………………………………    12

Fierro v. New York City Dep't of Educ.,
    994 F. Supp. 2d 581, 592-93 (S.D.N.Y. 2014)
    appeal dismissed Apr. 9, 2014 quoting Gentile,
    769 F. Supp.2d at 578………………………………………………………….    12

Fitzgerald v. Barnstable Sch. Comm.,
    555 U.S. 246, 129 S.Ct. 788, L.Ed.2d 582 (2009)………………………………..    18

Garcetti v. Ceballos,
    547 U.S. 410 S.Ct. 1952, 164 L.Ed.2d 689 (2006)……………………………..    5

Garcia v. Lewis,
    No. 05 Civ. 1153, 2005 WL 1423252, at *3 (S.D.N.Y. June 16, 2005)………..    5

Gentile v. Nulty,
    769 F. Supp. 2d 573 (S.D.N.Y. 2011) citing Kamholtz v. Yates County………    21

*iv*

*Gentile v. Wallen*,
    562 F2d 193 (2d Cir. 1977)……………………………………………………… 21

Grant v. Bethlehem Steel Corp.,
    622 F.2d 43, (2d Cir. 1980)……………………………………………………… 10

Huff v. West Haven Bd. Of Educ.,
    10 F.Supp.2d 117, (D. Conn. 1998)……………………………………………… 20

Hurdle v. Bd. Of Educ. Of City of New York
    113 Fed. Appx. 423 (2d Cir. 2004)……………………………………………… 19

Jackler v. Byrne,
    658 F.3d 225 (2nd Cir. 2011)…………………………………………………... 6

Johnson v. Newburgh Enlarged Sch. Dist.,
    239 F.3d 246, 251-52 (2d Cir. 2001) *citing* Cnty of Sacramento…………….. 14

Kaluczky v. City of White Plains,
    57 F.3d 202, 211 (2d Cir. 1995)……………………………………………….. 7, 14

Kamholtz v. Yates County,
    350 Fed.Appx. 589 (2d Cir. 2009)……………………………………………... 12

Kantrowitz v. Uniondale Union Free Sch. Dist.,
    822 F.Supp. 2d 196 (E.D.N.Y. 2011)………………………………………….... 20

Lewis v. Cowen,
    165 F 3d 154 (2nd Cir. 1999) *citing* Connick v. Myers………………………… 6

Mandel v. County of Suffolk,
    316 F.3d 368 (2nd Cir. 2003)…………………………………………………… 9, 10

Matter of Chamberlin v. Jacobson,
    260 A.D.2d 317, 689 N.Y.S.2d 83 (1999)……………………………………… 24

Matter of Garrity v. University at Albany,
    301 A.D.2d 1015 N.Y.S.2d 471 [2003]………………………………………… 24

Matter of Weber v. County of Nassau
    215 A.D.2d 567, 627 N.Y.S.2d 64 (*lv. Dismissed in part, denied*
    *in part* 87 N.Y.2d 1053, 644 N.Y.S.2d 143, 666 N.E.2d 1056 (1996)…………. 24

Matthews v. City of New York,
    488 Fed Appx. 532 (2nd Cir. 2012)…………………………………………… 8

*v*

Mazza v. Hendrick Hudson Cent. Sch. Dist.,
    942 F. Supp. 187 (S.D.N.Y. 1996)……………………………………………… 21

Monell v. Dep't of Social Services of City of New York,
    532 F.2d 259 (2d Cir. 1976)……………………………………………………… 18, 20, 21

Montefusco v. Nassau Cnty.,
    39 F Supp. 2d 231 (E.D.N.Y 1999)……………………………………………… 21

Moore v. County of Suffolk,
    851 F. Supp.2d 447, 458 (E.D.N.Y. 2012)…………………………………….. 21

Morris v. Lindau,
    196 F.3d 102 (2nd Cir. 1999)……………………………………………………… 9

Mosdos Chofetz Chaim, Inc. v. Vill of Wesley Hills,
    815 F. Supp.2d 679, 697 (S.D.N.Y. 2011)…………………………………….. 12

Mudge v. Zugalla,
    2014 WL 2453353, at *8 (N.D.N.Y. June 2, 2014)…………………………… 13, 167

Nat'l Fuel Gas Supply Corp. v. Town of Wales,
    904 F. Supp. 2d 324 (W.D.N.Y. 2012)……………………………………….. 25

Patterson v. City of Utica,
    370 F.3d 322 (2d Cir. 2004)……………………………………………………… 15

Pisello v. Town of Brookhaven,
    933 F.Supp. 202 (E.D.N.Y. 1996)…………………………………………….. 14

Platt v. Inc. Village of Southampton,
    _F.Supp.2d_, 2009 WL 3076099 (E.D.N.Y.) aff'd 391 Fed Appx,
    62 (2d Cir. 2010)…………………………………………………………….. 8

Posr v. Court Officer Shield #207,
    180 F.3d 409 (2d Cir. 1999)……………………………………………………… 89

Ramirez v. Hempstead Union Free Sch. Dist. Bd. Of Educ.,
    _F.Supp.3d_, (2014 WL 3547374) *11 (E.D.N.Y.)…………………………… 6, 223

Richardson v. New York State Dep't of Corr. Service,
    180 F.3d 426, 446 (2d Cir. 1999) …………………………………………….. 11

Rivera v. Cmty. Sch. Dist. Nine,
    145 F. Supp.2d 302 (S.D.N.Y.2001)………………………………………….. 9

Ross v. Breslin,
    693 F. 3d supra at 300 (2nd Cir., 2012)……………………………………….. 5

Rusk v. New York State Thruway Authority,
    2014 WL 3891624, *6 (W.D.N.Y. 2014)…………………………………….. 22

Segal v. City of New York,
    459 F.3d 207 (2d Cir. 2006)………………………………………………….. 13, 15,
    16, 17

Seils v. Rochester City Scho. Dist.,
    192 F. Supp. 2d 100 (W.D.N.Y. 2002)……………………………………… 20

Shekhem' El-Bey v. City of New York,
    419 F.Supp.2d 546 (S.D.N.Y.2006)………………………………………….. 9

Singh v. City of New York,
    524 F3d. 361 (2nd Cir. 2008) quoting Connick v. Myers……………………. 6

Sloup v. Loeffler,
    2008 WL 3978208, at *14 n. 18 (E.D.N.Y. 2008)…………………………… 11

Smart v. Goord,
    441 F.Supp.2d 631, 637 (S.D.N.Y.2006)…………………………………….. 5

Starr v. Georgeson S'holder, Inc.,
    412 F.3d 103 (2d Cir. 2005)………………………………………………….. 4

Todd v. Exxon Corp.,
    275 F.3d 191, (2d Cir.2011)………………………………………………….. 4

Tucker v. City of New York,
    _F Supp.2d_, 2011 WL 2893077, *5 (S.D.N.Y.)……………………………. 6

U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A. Petrobras,
    No. 98 Civ. 3099, 2001 WL 300735, at *2 (S.D.N.Y. Mar. 27, 2001)……… 5

Vaher v. Town of Orangetown, N.Y.,
    916 F. Supp. 2d 404, (S.D.N.Y 2013)………………………………………. 12

Valenti v. Massapequa Union Free Sch. Dist.,
    2010 WL 475203 (E.D.N.Y. 2010)………………………………………….. 19

Velez v. Levy,
    401 F.3d 75 (2d Cir.2005)……………………………………………………. 16

Weintraub v. Bd. Of Educ.,
    593 F. 3d 196 (2nd Cir. 2010) quoting Garcetti v. Ceballos……………….....    5

Yan Ping Xu v. New York City Dep't of Health,
    77 A.D.3d 40, 47, 906 N.Y.S.2d 222, 227 (App. Div. 2010)……………….    23

Yonkers Racing Corp. v. City of Yonkers,
    858 F.2d 855, 865 (2d Cir. 1988)……………………………………………    24


Federal Law

42 U.S.C. § 1983 claim…………………………………………………………..    18, 20


New York State Education Law

1702………………………………………………………………………………    19

1709………………………………………………………………………………    19

1711………………………………………………………………………………    19

3012………………………………………………………………………………    19

3019a……………………………………………………………………………..    19

3031………………………………………………………………………………    10, 19


Civil Service Law

New York Civil Service Law § 75-b………………………………………………..    22, 23


Civil Practice Laws and Rules

Article 78…………………………………………………………………………    23, 24, 25

## PRELIMINARY STATEMENT

Plaintiff, Michael Tweed commenced this action to correct an injustice of constitutional proportion when after he uncovered and reported criminal conduct occurring within Glen Cove High School and was then fired for no legitimate reason. Specifically, Mr. Tweed reported criminal conduct of the High School Principal, Assistant Principal, and another administrator who surreptitiously (1) changed final grades and/or Regents test scores for two students, and (2) then allowed the affected students to graduate and receive a high school diploma even though neither student qualified according to New York Education Law. Their criminal conduct was spurned on in part by local politics. Mr. Tweed reported the conduct first to the school superintendent and then cooperated with Nassau County District Attorney's Office. Despite getting assurances that he would be protected under whistleblower laws, the Defendants advised him several months before the expiration of his probationary employment he was being fired.

## BACKGROUND FACTS

Mr. Tweed was hired by Glen Cove City School District as Coordinator of Pupil Personnel Services. See Scheuermann Decl., Exh. A. A part of his projected duties included turning around the school district's guidance department that was in disarray. Amended Complaint, ¶¶18-19. [1]Throughout his tenure as the Coordinator of Pupil Personnel Services Mr. Tweed performed his duties admirably. ¶¶16, 19-24, 54, 57, 58, and 63. At the beginning of the 2012-13 school year, an employee raised issues about a student that had graduated, with the approval of high school principal, though the student never had successfully completed courses or passed particular regents examinations. ¶¶28-29. Eventually, other teachers complained that another student had also graduated, though he likewise never had successfully completed courses or passed particular regents. Id. Grade changes require the approval of the affected teacher and

---

[1] References to the Amended Complaint are referenced by the ¶ symbol.

1

high school administration.  Graduation determinations are the sole responsibility of the high school principal.

Mr. Tweed heard about the complaints, investigated them, but was afraid to report the administrators' criminal conduct for fear of retaliation, as he was a non-tenured administrator. ¶¶27 At the persistence of two employees, Mr. Tweed eventually reported the misconduct of principal and assistant principal about the first student to then Superintendent of Schools Joseph Laria in March, 2013.  ¶30.  In April 2013, Mr. Tweed then reported to Dr. Laria the criminal conduct of another administrator involving the second student who was involved in illegally changing the Regents grade of the other student.   ¶31, 33.

Mr. Tweed cooperated with the District's investigation and then with District Attorney's criminal investigation.   ¶31, 33, 35, 44-45; Scheuermann Decl., Exh. B.  In fact, Mr. Tweed met with an Assistant District Attorney on May 30, 2013.  While a Nassau County Grand Jury convened to consider criminal charges against certain school district employees was disbanded (¶45), the District Attorney's Office has publicly stated as recently as July, 2014 that its investigation was still pending.  Scheuermann Decl., Exh. C.

As a result of Mr. Tweed reporting the criminal behavior of high school administrators, Joseph Hinton, the high school principal was immediately suspended, forced to retire and eventually surrendered his teaching and administrator licenses to the New York State Education Department.  ¶50.  The High School Assistant Principal, Allen Hudson was denied access to the District's student management system, but still continues to work for the school district.  ¶51. On September 24, 2013, Mr. Hudson entered into a settlement agreement with Glen Cove High School in lieu of formal disciplinary charges in which he admitted he created an inaccurate record for a Glen Cove High School student with respect to a New York State Regents Exam assessment, and paid a fine totaling $26,750.  ¶52; Scheuermann Decl., Exh. D, p. 3.  Mr.

2

Hudson further agreed to enter into a separate Settlement Agreement with the New York State Education Department. Id., at p. 5. Finally, also on September 24, 2013, Melanie Arfman, another administrator in the school district entered into a settlement agreement with Glen Cove High School to settle disciplinary charges filed on June 25, 2013, in exchange for her admission that she altered a Regents Examination grade of a Glen Cove High School student in violation of NYSED procedure, and agreement to pay a fine totaling $26,750. Scheuermann Decl., Exh. E, p. 3. Ms. Arfman further agreed to enter into a separate Settlement Agreement with the New York State Education Department. Id., at p. 4.

Back in May, 2013, individual members of the Board of Education improperly, maliciously, willfully disclosed Mr. Tweed's identity as a whistleblower to the community. ¶37. Subsequently, Mr. Tweed learned from school district employees, parents and community members that certain members of the Board of Education were furious at him cooperating and were planning to fire him when his probationary term expired. ¶¶ 38-40. After Dr. Laria was forced to resign in May, 2013 (¶ 46), Mr. Tweed learned that a certain faction of the Board was intending to fire any employee associated with Dr. Laria in bringing the corruption to light. ¶ 47.

Despite learning of the retaliatory animus against him, Mr. Tweed continued to perform his duties in exemplary fashion. ¶¶ 54, 57-60, 63. In a series of meetings with his direct supervisor, Dr. Israel, in the months following the start of school in September 2013, Mr. Tweed pressed Dr. Israel about his tenure status. ¶57. Neither of Mr. Tweed's direct supervisors, Dr. Michael Israel or Louis Zocchia had any issues with his performance. ¶¶57, 60-61, 63. In early February, 2014 Dr. Israel confided that he did not know anything about Mr. Tweed's tenure, implying that the decision was only Defendant Rianna's with input from the Defendant Board. ¶¶61-62. On February 12, 2014, Defendant Rianna advised Mr. Tweed that she would not recommend him for tenure, thereby firing him effective June 30, 2014. Mr. Tweed was the only

3

probationary employee up for tenure, but not granted tenure. ¶65. Even a probationary teacher working under Mr. Tweed's supervision, whom Mr. Tweed recommended to Defendant Rianna be granted tenure, was recommended by Defendant Rianna for tenure. ¶66.

Although she earlier told Mr. Tweed that she had no issues with his performance (¶58), Defendant Rianna then concocted several baseless grounds attempting to justify his firing in the blatant retaliation against Mr. Tweed. ¶57. Mr. Tweed refuted the claims. ¶¶74-75. Subsequently, living up to its earlier warning, the Board terminated Mr. Tweed's employment in violation of his rights as part of its informal policy or custom to get rid of anyone associated with the corruption investigation. ¶¶67, 91-94. This lawsuit ensued.

STANDARD OF PROOF

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Starr v. Georgeson S'holder, Inc., 412 F.3d 103, 109 (2d Cir. 2005). A complaint should be dismissed only if it fails to contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In considering a motion to dismiss, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir.2011).

In assessing the legal sufficiency of a claim, the Court may consider those facts alleged in documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 46-48 (2d Cir.1991); Smart

4

v. Goord, 441 F.Supp.2d 631, 637 (S.D.N.Y.2006) ('[W]hile courts generally do not consider matters outside the pleadings, "they may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a 12(b)(6) motion.'" *quoting* Garcia v. Lewis, No. 05 Civ. 1153, 2005 WL 1423253, at *3 (S.D.N .Y. June 16, 2005)); U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras, No. 98 Civ. 3099, 2001 WL 300735, at *2 (S.D.N.Y. Mar. 27, 2001) ("[T]he Court can consider documents referenced in the complaint and documents that are in the plaintiffs' possession or that the plaintiffs knew of and relied on in bringing suit.").

## ARGUMENT

## POINT I

## THE FIRST AMENDMENT RETALIATION CLAIM IS VALID

Defendants argue that Plaintiff's First Amendment Retaliation claim is legally insufficient because (1) his speech was not constitutionally protected and (2) lacked temporal proximity, but do not challenge that the pleadings adequately allege an adverse employment action. Whether an employee's speech was made pursuant to his "'official duties is 'a practical one,' Weintraub v. Bd. of Educ., 593 F. 3d 196, 202 (2nd Cir. 2010) *quoting* Garcetti v. Ceballos, 547 U.S. 410, 424, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), focusing on whether the speech "was part-and-parcel of his concerns about his ability to properly execute his duties." Weintraub v. Bd. of Educ., 593 F. 3d at 203 (internal quotation marks omitted). However, the inquiry of whether the employee is speaking pursuant to his official duties is not susceptible to a bright line rule. Ross v. Breslin, 693 F. 3d 300 (2nd Cir., 2012). Courts must examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two; and consider other contextual factors, including whether the complaint was conveyed to the public. Ross v. Breslin, 693 F. 3d at 306 (citations omitted).

5

Whether an employee's speech addresses a matter of public concern is a question of law to be determined based on the "content, form and context of a given statement, as revealed by the whole record." Lewis v. Cowen, 165 F.3d 154, 163 (2nd Cir. 1999) *citing* Connick v. Myers, 461 U.S. 138, 147-48 (1983), n. 7. An "[e]mployee's expression is not a matter of public concern when it 'cannot be fairly considered as relating to any matter of political, social, or other concern to the community'." Singh v. City of New York, 524 F3d. 361, 372 (2nd Cir. 2008) *quoting* Connick, 461 U.S. at 146. However, criminal conduct relating to public education is generally recognized as a matter of public concern. (¶88) See Cioffi v. Averill Park Cent. Sch. Dist., 444 F.3d 158, 164 (holding, in part that criminal activity in schools is of "social" or "other" concern to communities); Ramirez v. Hempstead Union Free Sch. Dist. Bd. of Educ., __F.Supp.2d__, (2014 WL 3547374) *11 (E.D.N.Y.)(denying defendant's motion to dismiss finding that school employee reporting unlawful and illegal inflation of student grades to procure county and state funding constituted speech that touched on a matter of public concern); see also Tucker v. City of New York, __F.Supp.2d__, 2011 WL 2893077, *5 (S.D.N.Y.) (holding that allegations of corruption and misuse of public funds by supervisors and coworkers are matters of public concern); see generally, Jackler v. Byrne 658 F.3d 225 (2nd Cir. 2011) (holding that speech pertaining to police misconduct is a matter of public concern).

Accepting Plaintiff's allegations as true, he reported that the high school administrators "tampered with official school district records by changing two students' failing classroom grades and/or New York State Regents grades" to enable the unqualified students to graduate. ¶¶28-29. He first complained in March 2013 to then superintendent of schools Dr. Laria. ¶¶30. Plaintiff followed that up with additional meetings including one with school attorney, Christopher Powers, Esq. in April, 2013. Plaintiff then cooperated with a criminal investigation commenced by the Nassau County District Attorney's Office (¶¶ 34-35, 44-45) in late May,

2013, which investigation the Nassau County District's Attorney Office has noted is still ongoing as of July, 2014.  See Scheuermann Decl., Exh. B.  Plaintiff spoke as a private citizen when he cooperated with the Nassau County District Attorney's Office and the Nassau County Grand Jury Investigation.  (¶¶34-35, 44-45; Scheuermann Decl., Exh.C).  Kaluczky v. City of White Plains, 57 F. 3d 202, 210 (2d. Cir. 1995); See also Benedict v. Town of Newburgh, 95 F. Supp. 2d 136, 143 (S.D.N.Y. 2000) (holding that "testifying truthfully is constitutionally protected from retaliation, and that it is a right existing wholly apart from the First Amendment protection of speech generally, and without the need to sow that the testimony relates to a matter of public concern").

Contrary to Defendants' contentions (MOL, p. 9), Plaintiff's speech did not involve issues with transcripts, but rather, improper grade changes for classes and Regents examinations. It also involved the subject administrators conspiring to award high school diplomas to two students who did not qualify.  Contrary to Defendants' superficial contention, those required actions are not within Plaintiff's primary duties as discovery will establish.  The Amended Complaint does not allege that Plaintiff oversaw grade changes or approved students to graduate. As discovery will reveal, Plaintiff was not responsible for changing classroom grades or Regents examination scores.  Additionally, Plaintiff has no authority or responsibility as to which students may graduate or not.  As shown by relevant Board Policies and New York Commissioner of Education Regulations, functions related to grade changes and who may graduate are the exclusive responsibility of the teacher with direct supervision and ultimate approval of the high school principal.  See Scheuermann Decl., Exhs. F and G.  Hence, at this early stage in the case, accepting Plaintiff's averments as true, it cannot be said as a matter of law that criminal tampering with classroom and Regents grades and/or the corresponding illegal approval of unqualified students to graduate were part and parcel of his primary duties.

Moreover, since there is no bright line rule relating to what speech constitutes matters within the primary duties of a public employee's duties, discovery needs to occur to learn exactly what was the nature of the Plaintiff's job responsibilities, the nature of the speech and the relationship between the two before a Court can be decided whether the plaintiff can continue to pursue his First Amendment retaliation claim. Matthews v. City of New York, 488 Fed Appx. 532, 533 (2nd Cir. 2012) (summary order).

Every case cited by the Defendants is inapposite because they involve summary judgment motions, with the exception of Platt v. Inc. Village of Southampton, __ F.Supp.2d __, 2009 WL 3076099 (E.D.N.Y.) aff'd 391 Fed Appx, 62 (2d Cir. 2010). Platt is distinguishable because in that case the plaintiff reported an affair between the police chief and a subordinate which on its face clearly did not involve a matter of public concern. 2009 WL 3076099 *5. In addition, the Platt Court was evidently angered by the plaintiff pleading alleged retaliatory treatment that arose *before* he engaged in protected activity and then attempted to supplement the pleadings to alter those facts. Id., at *3 and 4.

Defendants also allege that Plaintiff has failed to sufficiently plead a causal connection in his First Amendment Retaliation claim. In order to establish a causal connection at the pleading stage, the "allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.'" Davis v. Goord, 320 F.3d 346, 354 (2d Cir.2003); *see also* Shekhem' El-Bey v. City of New York, 419 F.Supp.2d 546, 552 (S.D.N.Y.2006). The Second Circuit has no bright line for how close in time the adverse employment action must follow the protected activity in order to sustain the causation element. Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed., 444 F. 3d 158, 167-68 (2nd Cir. 2006) (*quoting* Morris v. Lindau, 196 F.3d 102, 110 (2nd Cir. 1999). On a motion to dismiss, a reasonable inference of a causal connection is all that is required. See Posr v. Court Officer Shield # 207, 180 F.3d 409, 418 (2d

Cir.1999) ("[T]he plaintiff's pleading need not clearly establish that the defendant harbored retaliatory intent. It is sufficient to allege facts which could reasonably support an inference to that effect."); Rivera v. Cmty. Sch. Dist. Nine, 145 F.Supp.2d 302, 309 (S.D.N.Y.2001). This "can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999). A court must "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of [each] particular case [ ]," Espinal v. Goord, 558 F.3d 119, 129 (2d Cir.2009). Where a plaintiff asserts enough direct evidence of retaliatory animus to create a triable question of fact on the issue of a causal connection as here, a longer lapse between the protected speech and the adverse employment action does not necessarily "conclusively establish lack of causation." See Mandel v. County of Suffolk, 316 F.3d 368, 384 (2nd Cir. 2003).

Defendants' argument that the causal link is too attenuated must fail. MOL, pp. 9-10. As pled, the Amended Complaint "establishes a causal connection that suggests retaliation by showing that protected activity was close enough in time to the adverse action." Espinal v. Goord, 558 F.3d at 129 citing Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)). Plaintiff last reported about the criminal conduct to the Nassau County District's Attorney Office on or about May 30, 2013. (¶44) Scheuermann Decl., Exh. B. On February 12, 2014, Defendant Rianna advised Mr. Tweed that she would not recommend him for tenure. In and between his protected speech and notification of his termination, Plaintiff repeatedly received evidence from employees, parents and community members of retaliatory animus by a certain faction of the Board of Education. (¶¶36-40). In this time frame also Dr. Laria was abruptly forced out (¶54) and then Board President Joel Sunshine suddenly resigned. ¶49.

9

Juxtaposed to the expressed retaliatory animus and abrupt departures of the district's past Board President and Superintendent was the averment that the High School Assistant Principal, who was forced to negotiate a disciplinary settlement based on the information supplied by Mr. Tweed (usually a career killer), was actively being considered by the new Defendant Board for the high school principal position in the Spring 2014 (¶77), which raises the reasonable inference that the segment of the Board who expressed retaliatory animus toward Plaintiff, may have done so in part to protect the assistant principal, whom they supported.

Moreover, by law, the anticipated adverse employment action, i.e., denial of an affirmative tenure recommendation, was only due by April 30, 2014, 60 days before the end of Plaintiff's probationary term ending on June 30, 2014. See Education Law §3031. It would have looked overtly retaliatory to have terminated him in July 2013, when the Defendant Board of Education changed its composition due to May 2013 elections, or in August -October, 2013, when Mr. Sunshine resigned around the execution of the disciplinary settlements involving the remaining administrators, that included admissions of guilt regarding grade fixing/tampering. (¶49; Scheuermann Decl., Exhs. H, I, and J). Hence, it is remarkable, that Defendant Rianna revealed the Defendants retaliatory action as early as February 12, 2014 instead of April 30, 2014. Based on all of these factors, it is respectfully submitted that the early notice of termination Plaintiff received on February 12, 2014, more than adequately establishes sufficient causation at this stage in the proceedings. See Mandel v. County of Suffolk, 316 F.3d at 384; Richardson v. New York State Dep't of Corr. Service, 180 F.3d 426, 446–47 (2d Cir.1999) (acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier); Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45–46 (2d Cir.1980) (eight month gap between EEOC complaint and retaliatory act suggested causal relationship).

## POINT II

### PLAINTIFF'S FOURTEENTH AMENDMENT CLAIMS MUST SURVIVE THE MOTION TO DISMISS

#### A.  Plaintiff has sufficiently alleged an Equal Protection cause of action

Defendants correctly point out that the United States Supreme Court in Engquist v. Oregon Dep't of Agr., 553 U.S. 591 (2008), held that "class of one" claims no longer exist in a public employment setting. This being said, Defendants incorrectly attempt to categorize the Plaintiff as falling within a class of one. The Amended Complaint very clearly alleges that the Plaintiff was one of several individuals, including the ousted Superintendent, who were being targeted by the defendants in retaliation for their protected whistleblowing activities.  These individuals were treated differently with malicious retaliatory animus than similarly situated other District employees, including those who committed the illegal acts reported by Plaintiff, with the express illegal intent to punish whistleblowers. Thus, Plaintiff has successfully alleged belonging to a class that consists of more than one individual.

Additionally, Plaintiff has successfully alleged an equal protection cause of action under a selective enforcement theory of liability. The courts within the Second Circuit are divided whether such a selective enforcement is permitted in the wake of Engquist and in the wake of the ambiguity, many analyze whether such a cause of action has been successfully alleged. Gentile v. Nulty, 769 F. Supp. 2d 573, 583 (S.D.N.Y. 2011); citing Kamholtz v. Yates County, 350 Fed.Appx. 589, 591 (2d Cir.2009), Faulks v. City of Hartford, 2010 WL 259076, at *7 (D.Conn. 2010), Sloup v. Loeffler, 2008 WL 3978208, at *14 n. 18 (E.D.N.Y. 2008).

The elements of a selective enforcement cause of action are "(1) that [s]he was treated differently from others similarly situated, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of

constitutional rights, or malicious or bad faith intent to injure a person." Fierro v. New York City Dep't of Educ., 994 F. Supp. 2d 581, 592-93 (S.D.N.Y. 2014), appeal dismissed (Apr. 9, 2014), *quoting* Gentile, 769 F.Supp.2d at 578.

It is without a doubt that the Plaintiff has successfully alleged the necessary elements of a selective enforcement of both the Education Law processes behind granting tenure and the applicable collective bargaining agreement by the defendants. With regard to the first element, similarly situated individuals, a plaintiff need not provide evidence of similarly situated individuals at the motion to dismiss stage, so long as the facts as alleged to permit a jury to conclude that they are similarly situated. Vaher v. Town of Orangetown, N.Y., 916 F. Supp. 2d 404, 434-35 (S.D.N.Y. 2013), *citing* Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679, 697 (S.D.N.Y. 2011). The Amended Complaint clearly alleges that there were other probationary employees who were up for tenure in the Spring of 2014, none of whom were either denied tenure or asked to extend their probationary periods so that Superintendent Rianna has sufficient time to evaluate them. (¶¶65, 66).

As to the second element of the selective enforcement cause of action, it is without a doubt that the Amended Complaint has successfully alleged that the differing treatment by the defendants was in order to punish the Plaintiff for exercising his First Amendment rights as a whistleblower and was done maliciously and with the bad faith intent to harm him. Notably, the Amended Complaint is replete with examples of individuals approaching the Plaintiff to warn him that the Defendants were out to get all involved in the whistleblowing and were going to fire him. (¶¶37-40, 46-47, 74) It is further alleged several times that these actions by the defendants were done maliciously and in bad faith. (¶¶68, 74, 76, 79, 86, 91-94, 97-100, 104-105, 108)

Thus, it is clear that Plaintiff has successfully alleged a selective enforcement cause of action that must survive as a matter of law.

### B. Plaintiff has sufficiently alleged a Due Process cause of action

#### 1. Due Process Property Interest

Plaintiff admits that as a probationary employee, he has no constitutionally protected property interest in his employment. See, Segal v. City of New York, 459 F.3d 207, 211 (2d Cir. 2006). This being said, plaintiff does have a constitutional property interest in his educational licenses, which are effectively taken away through the Defendants' campaign to blacklist the Plaintiff in the field of public education. This case, particularly at this early juncture, is factually similar to Mudge v. Zugalla, 2014 WL 2453353, at *8 (N.D.N.Y. June 2, 2014), where at the motion to dismiss level it was held that the failure of a plaintiff to avail himself of an Article 78 proceeding was not fatal to his stigma-plus cause of action. In Mudge, the plaintiff, a substitute teacher, alleged termination of at-will employment in connection with a calculated effort to prevent the plaintiff from obtaining employment and using his licenses when the defendants, including investigators from the State Education Department were spreading untruths to potential employers. Id. The court held that discovery was necessary to ascertain the Defendants' exact roles to establish whether the defendants were low level government officials and whether the actions alleged were random or specifically designed to deprive the plaintiff of his constitutional rights. Id.

In the instant action, Plaintiff has clearly alleged that the Defendants have engaged in a systematic campaign to blacklist him with the intention of preventing him from finding employment in the field of education on Long Island. (¶79) The inability to find work within the field of public education also implicates the loss of his constitutional property right in his educational licenses. Thus, Plaintiff's due process property claims must survive as a matter of law.

13

### 2.   Substantive Due Process

In order to successfully allege a claim for a substantive due process violation, it must be alleged that the government action being challenged was "arbitrary, conscience shocking, or oppressive in a constitutional sense." Carmody v. Vill. of Rockville Ctr., 661 F. Supp. 2d 299, 337 (E.D.N.Y. 2009), *citing* Pisello v. Town of Brookhaven, 933 F.Supp. 202, 214 (E.D.N.Y.1996), Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir.1995)). Substantive due process does not protect against government action that is "incorrect or ill-advised." Id., *citing* Kaluczky, 57 F.3d at 211. There is no clear standard for what actions are deemed conscience shocking, but it has been held that it stems from actions that are "malicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience. Such acts by their very nature offend our fundamental democratic notions of fair play, ordered liberty and human decency." Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 251-52 (2d Cir. 2001), *citing* Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 (1998), Breithaupt v. Abram, 352 U.S. 432, 435 (1957).

There can be absolutely no doubt that the allegations contained within the Amended Complaint go straight to the heart of a substantive due process claim. The very idea that a person's livelihood through tenure, which is supposed to be determined through a fair evaluation of an administrator's job performance, is denied in open and blatant retaliation for reporting illegalities and improprieties within public education absolutely offends the notations of fair play and shocks the conscience. There is no reasonable interpretation of the actions alleged within the Amended Complaint that would result in the malicious targeting of a whistleblower as being merely "incorrect or ill advised." Even if such a definition is up for debate, it is inapplicable in a motion to dismiss stage and a simple reading of the Amended Complaint amply demonstrates

that conscience shocking behavior has been sufficiently alleged to permit this cause of action to continue through to discovery as a matter of law.

### 3. Stigma Plus

A probationary employee in the field of public education may still be entitled to due process protections under what is known as a stigma-plus theory of liability. Segal, , 459 F.3d at 212-13, *citing* Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir.2004); DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir.2003). In order to satisfy the stigma aspect of such a cause of action, three components must be alleged. The first component requires an allegation that the defendants made statements that called into question either the plaintiff's "good name, reputation, honor, or integrity" or his "competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession" Id., *citing* Patterson, 370 F.3d at 330, Donato v. Plainview–Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630–31 (2d Cir.1996). The second element requires that such stigmatizing statements were made public. Id. The third component of the stigma aspect is an allegation that the statements "were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." Id., *citing* Velez v. Levy, 401 F.3d 75, 89 (2d Cir.2005); Patterson, 370 F.3d at 330, 335.

In their motion, Defendants do not challenge that plaintiff has sufficiently alleged stigmatizing statements made by the defendants to warrant survival of the instant motion to dismiss. Rather, Defendants claim that Plaintiff has failed to adequate plead a deprivation of a tangible property right (the "plus") and that the defendants publicly made defamatory statements.

### a.   Deprivation of tangible interest

The deprivation of government employment, such as the denial of tenure in the field of public education, is a sufficient tangible interest for a stigma-plus claim as a matter of law. Segal, 459 F.3d at 212-13. In the instant action, Plaintiff has alleged that he was denied tenure within the Defendant District as Coordinator of Pupil Personnel Services in direct retaliation for his whistleblowing activities. (¶¶76, 78) Thus, he has met the deprivation of a tangible interest as a matter of law.

### b.   Lack of adequate due process/Procedural due process

Defendants correctly assert that courts have held a proceeding pursuant to Article 78 of the Civil Practice Law and Rules can be sufficient due process to clear an at-will employee's name in a stigma-plus context, as well as satisfy any procedural due process concerns. It is exactly the reason why plaintiff alleged a cause of action sounding in such relief within the Amended Complaint. (Amd Complaint, 4th Cause of Action). The ability of this Court to hear such a cause of action will be addressed below, but it is significant to note that Defendants are attempting to have their cake and eat it too when it comes to an Article 78 claim. In one breath, they claim that an Article 78 proceeding is necessary and in the next they claim that Plaintiff is not entitled to one under an election of remedies cause of action.

Nevertheless, Plaintiff would be remiss if it was not pointed out that an Article 78 proceeding is not necessary in this particular case. Plaintiff respectfully directs the Court to the description of the facts in the case Mudge,  2014 WL 2453353 at *8 within Point II(B)(1) above. In that matter, the court held that discovery was necessary to ascertain whether an Article 78 proceeding was an appropriate remedy when it was alleged that the Defendants were engaging in a pattern of conduct designed to prevent the plaintiff from finding future employment and, consequently, denied him of his protected property rights in his educational licenses. Id. Those

facts mirror the allegations herein and it is therefore necessary that discovery take place as a matter of law.

### (c) The publication

With regard to the second element, the stigmatizing statement being made public, the Amended Complaint makes several references to the fact that people other than the Defendants, including community members, PTA members and District support staff, were coming to the Plaintiff and informing him that the Defendants were going to fire him due to his whistleblowing activities. (¶¶37-40, 46-47, 74)  Further, Plaintiff was publically identified as a whistleblower in the press the day after the Defendants voted to terminate his employment. (¶78)

Additionally, the Second Circuit Court of Appeals has clearly held that stigmatizing statements placed within a personnel file are sufficient to satisfy the contemporaneous public disclosure element. Segal, 459 F.3d at 213, *citing* Brandt v. Bd. of Coop. Educ. Servs., 820 F.2d 41, 45 (2d Cir.1987). The blatantly false and defamatory examples of Plaintiff's incompetence were provided to the Defendant Board of Education and its members, along with Plaintiff's extensive proof that the excuses were false.  Defendant Board of Education and its individual members completely disregarded the truth and used it as pretext for terminating Plaintiff in retaliation for his whistleblowing activities. As these statements were part and parcel of the Plaintiff's employment with the District, they are, upon information and belief, contained within his personnel file.  Thus, Plaintiff has adequately alleged the publication aspect of a stigma plus claim as a matter of law.

**POINT III**

**THE BOARD OF EDUCATION AND ITS MEMBERS ARE
"PERSONS" UNDER 1983 AND ARE  SUABLE.**

Contrary to Defendant's bald assertion, the Supreme Court has consistently held that a

local municipality, such as a Board of Education, is an appropriate party along with its members

acting in their official capacity for damages under 42 U.S.C. §1983.  Fitzgerald v. Barnstable

Sch. Comm., 555 U.S. 246, 129 S.Ct. 788, 797, 172 L.Ed.2d 582 (2009) (citation omitted); see

also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)

(holding the same as to a school board); Beattie v. Madison County Sch. Dist., 254 F.3d 595, 600

n. 2 (5th Cir.2001) ("Under § 1983, [Plaintiff] may sue a local governing body, such as the

school district, or the school board as policymaker for the district, for monetary, declaratory, or

injunctive relief if the challenged action implements or executes a policy officially adopted by

the body's officers.").  This principle of law can be traced backed to the 1871 legislative history

of the predecessor statute to 42 U.S.C. §1983.  Monell v. Dep't of Soc. Servs., 436 U.S. 658,

supra at 688-89.

At this early stage in the proceedings, Plaintiff is entitled to all reasonable inferences

from the facts alleged in the Amended Complaint and documents incorporated pursuant to Rule

12(c) (See Scheuermann Decl) that clearly establish a prima facie constitutional violation of Mr.

Tweed's rights.  See Points I and II supra.  The Complaint also sufficiently pleads a custom or

policy adopted by Defendant Board of Education and its members that caused the alleged

constitutional violations of Mr. Tweed's rights, even though such a policy and/or custom was not

publicly adopted as such.  Monell v. Dep't of Soc. Servs., 436 U.S. at 690.

Specifically the Amended Complaint alleges that starting in May 2013, a segment of the

Board (and a group of its individual members) expressed a new policy objective and/or custom

to terminate the employment of any employee who was associated with reporting the criminal conduct associated with the testing scandal within the school district.  (¶¶37-40, 46-47, 74).  As required by law, Board elections then occurred in May 2013, resulting in the change of one Board member effective July 2013 (Ida McQuair did not seek reelection and was replaced by Richard Maccarone) and elected Donna Brady as President of the Board and election of Donna Brady as President of the Board.    See Education Law §1702; Scheuermann Decl., Exh. H.  The make-up of the Board was further changed with the sudden departure of Board President Joel Sunshine, in August 2013 (¶¶42, 49; Answer ¶49).  Scheuermann Decl., Exh. I.  The Board handpicked Defendant Maureen Pappacristou, who successfully ran for the vacant board seat by Mr. Sunshine in October, 2013 (Amd. Compl., ¶5)  Scheuermann Decl., Exh. J.  Based on these events, a reasonable inference is that the faction of the Board that had verbalized its intent to fire anyone associated with the investigation had successfully became the majority of the Board by October 2013 and then implemented its policy and/or custom of terminating the employment of these employees, one of whom was Mr. Tweed.  The power to terminate the employment of any probationary employee resides with the Defendant Board and its individual members with the involvement of the superintendent of schools, whom the Board had recently hired and supervised (Education Law § 1711).  See Education Law §§ 1709, 3012, 3019a, 3031.  Hurdle v. Bd. of Educ. of City of New York, 113 Fed. Appx. 423, 425, (2d Cir. 2004).  As further alleged, the Defendant Board and its individual members in their official and individual capacities then violated Mr. Tweed's constitutional rights by terminating his employment in fulfillment of the execution of their recent policy and/or acquired custom.  (¶¶68, 74, 76, 79, 86, 91-94, 97-100, 104-105, 108)  Accordingly, the Amended Complaint sufficiently establishes a claim for damages against the Defendant Board and its members acting in their official capacity under 42 U.S.C. §1983.  See Valenti v. Massapequa Union Free Sch. Dist., 2010 WL 475203 (E.D.N.Y.

2010); Huff v. West Haven Bd. of Educ., 10 F.Supp.2d 117, 121-22 (D. Conn. 1998) *quoting* Monell v. Dep't of Social Services of City of New York, at 690; see also Kantrowitz v. Uniondale Union Free Sch. Dist., 822 F. Supp. 2d 196 (E.D.N.Y. 2011).

Defendants citation to a minority view expressed by some courts in the Second Circuit is procedurally and substantively different than the case at bar.  With the exception of Desir v. Bd. of Co-op Educ. Servs., 2008 WL 4508735, (E.D.N.Y. 2008), all of the cases Defendants relied on were decided at summary judgment after discovery and an opportunity to fully develop a factual record.  As to the Desir case, it dealt with the typical garden variety constitutional lawsuit prosecuted by an incompetent teacher that has inundated the federal court system over the last twenty years.  That due process and equal protection case is factually different than the case at bar because the plaintiff in Desir did not plead the required elements of a Monell claim that the constitutional violation was based on the policy makers' established policy or custom, as done here.

Substantively, every case referenced by the Defendants relate back to the Second Circuit's decision in Monell v. Dep't of Social Services of City of New York, 532 F.2d 259, 263 (2d Cir. 1976), which was subsequently overruled by the United States Supreme Court. See, Monell v. Dep't of Social Services of City of New York, supra.  Notably, *Gentile v. Wallen,* 562 F.2d 193 (2d Cir.1977), predated the Supreme Court's reversal of Monell and was, therefore,expressly overruled by the Supreme Court.  Inasmuch as Montefusco v. Nassau Cty., 39 F. Supp. 2d 231, 238 (E.D.N.Y. 1999), and Mazza v. Hendrick Hudson Cent. Sch. Dist., 942 F. Supp. 187, 192 (S.D.N.Y. 1996), directly relied on Gentile, they lack any precedential value to instant case. Also, because Desir v. Bd. of Co-op. Educ. Servs., at *2 then exclusively relied upon Mazza, supra, and Seils v. Rochester City Sch. Dist., 192 F. Supp. 2d 100 (W.D.N.Y.

2002), aff'd 99 Fed. Appx. 350 (2d Cir. 2004), cited only to <u>Montefusco</u>, they lack binding authority here.

**POINT IV**

**<u>THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION</u>**

The court has the authority to exercise pendent jurisdiction over state law claims that stem from a "common nucleus of operative fact". <u>Moore v. County of Suffolk</u>, 851 F.Supp.2d 447, 458 (E.D.N.Y. 2012). Constitutional claims are sufficient to support jurisdiction over pendent state law claims when the constitutional claim are not wholly insubstantial or obviously frivolous. <u>Id.</u>

Defendants' memorandum of law cite to several cases that are not on point. First, in <u>Cushing v. Moore</u>, 654 F.2d 189, 192 (2d Cir. 1981), the court did not even consider supplemental jurisdiction because the complaint was dismissed due to lack of federal jurisdiction. Here, the Plaintiff's constitutional causes of action are sufficiently alleged within the Amended Complaint to allow for continued survival of the state law claims.

Similarly, <u>Cave v. East Meadow Union Free School Dist.</u>, 514 F.3d 240, 250 (2d Cir. 2008), is inapplicable here. In that case, supplemental jurisdiction was not exercised because the Court lacked federal jurisdiction to hear plaintiff's federal ADA claims due to the plaintiff's failure to exhaust the required administrative remedies. <u>Id.</u>  There are no administrative remedies that Plaintiff had to follow prior to filing the instant case.  Therefore, hearing the Plaintiff's state law claims here is appropriate.

Since the court has original jurisdiction to hear the federal claims asserted by Plaintiff, it should also exercise its right to supplemental jurisdiction to hear the state claims. Since, the court has not dismissed all federal claims over which it has original jurisdiction, it should therefore not

decline to exercise supplemental jurisdiction. However, if the court decides to dismiss all federal claims, Mr. Tweed requests it remand all state claims to a state court.

**POINT V**

**THE NEW YORK CIVIL SERVICE LAW § 75-B CLAIM
SHOULD NOT BE DISMISSED**

To state  a claim under New York Civil Service Law § 75-b, the plaintiff must allege: (1) that he disclosed information to a governmental body regarding what he reasonably believed to be improper governmental action; (2) an adverse personnel action was taken against him; and (3) there is a causal connection between the disclosure and the adverse personnel action. Rusk v. New York State Thruway Authority, 2014 WL 3891624, *6 (W.D.N.Y. 2014).   The Plaintiff acknowledges that a § 75-b claim may not be asserted against individual defendants, however, it may nevertheless be asserted against the Board of Education and the School District. The Amended Complaint more than adequately alleges a cause of action under Civil Service Law § 75-b. It is alleged that Plaintiff uncovered and reported grade alterations that permitted students to graduate, who would have otherwise been unentitled to do so, which by any standard could be construed as improper governmental action (not to mention criminal conduct). The Amended Complaint also clearly alleges that he was terminated from his employment with the Defendants in direct retaliation for his whistleblowing activities.

Defendants' contention that a violation of a specific law or regulation is simply incorrect. "New York Civil Service Law § 75-b, unlike New York Labor Law § 740, does not require a Plaintiff to allege a violation of a law, rule, or regulation that presents a danger to public health or safety. Rather, under New York Civil Service Law § 75-b(2)(a)(ii), the Plaintiff may alternatively allege what he reasonably believes to be true and which he reasonably believes constitutes an improper governmental action." Ramirez, 2014 WL 3547374 * 8.  The facts in

Ramirez are surprisingly similar to those at hand. Plaintiff uncovered a system of grade changing within the Hempstead school district and reported such to the Commissioner of Education. Id.  It was further alleged that this whistleblowing resulted in the Plaintiff's employment being terminated. Id.  The Court held that those facts were sufficient to survive a motion to dismiss and that violations of specific laws or regulations need not be alleged. Id.

Defendants' reliance on Batyreva v. New York City Dep't of Educ. 19 Misc. 3d 1128(A) (Sup. Ct., N.Y. Cty., 2008), *rev on other grounds,* 57 A.D.3d 322 (1st Dept., 2008), is misplaced. In that matter, the Plaintiff was merely alleging the violation of an internal policy concerning what color ink was to be used for grading examinations. Id. In the instant action, Plaintiff disclosed information to the school district and the Nassau County District Attorney's Office that he believed to be improper governmental action, and as a result he was retaliated against by the district and Board of Education by having his employment terminated. As Plaintiff has plead all essential elements of a § 75-b claim, the Defendant's motion to dismiss should be denied.

**POINT VI**

**THE COURT DOES NOT HAVE TO DISMISS PLAINTIFF'S ARTICLE 78 CAUSE OF ACTION**

Plaintiff's Fourth Cause of Action seeks to have the defendants' actions deemed arbitrary, capricious, and contrary to law in accordance with CPLR Article 78. Defendants seek to have this cause of action dismissed on the basis that it is not permitted under an election of remedies theory and also on a jurisdictional basis.  Both positions are incorrect.

First, the idea that Plaintiff cannot allege an Article 78 cause of action due to the election of a Civil Service Law §75-b whistleblower cause of action is erroneous. In New York, courts State routinely hear both causes of action and even have upheld the availability of a whistleblower claim brought within an Article 78 proceeding. See, Yan Ping Xu v. New York

23

City Dep't of Health, 77 A.D.3d 40, 47 (1st Dept., 2010) (case reinstated and remanded for hearing on sufficiency of petitioner's notice and adequacy of internal remedies), *citing* Matter of Garrity v. University at Albany, 301 A.D.2d 1015 (3d Dept., 2003)(reinstating article 78 claim alleging unlawful retaliatory discharge, although petitioner could not establish all elements of whistleblower claim); Matter of Chamberlin v. Jacobson, 260 A.D.2d 317 (1st Dept., 1999)(in article 78 proceeding, petitioner failed to demonstrate that he was terminated solely for reasons violative of Whistleblower's Law); Matter of Weber v. County of Nassau, 215 A.D.2d 567 (2d Dept., 1995), *lv. dismissed in part, denied in part* 87 N.Y.2d 1053 (1996) (in article 78 proceeding, trial court correctly directed trial of probationary employee's claim that she was terminated in violation of Whistleblower's Law because she insisted on reporting child abuse by a patient at the psychiatric hospital where she worked; petitioner ultimately did not establish merits of claim).

Second, as for the jurisdictional aspects of Plaintiff's fourth cause of action, there is a dispute as to whether Federal Courts have authority to entertain Article 78 causes of action. *Compare,* Casale v. Metro. Transp. Auth., 2005 WL 3466405, at *6 (S.D.N.Y. 2005); Nat'l Fuel Gas Supply Corp. v. Town of Wales, 904 F. Supp. 2d 324, 336 (W.D.N.Y. 2012); Cartagena v. City of New York, 257 F. Supp. 2d 708, 711 (S.D.N.Y. 2003). Despite these conflicting decisions, it is acknowledged that the vast majority of cases decline to hear such causes of action and remand them to state court. This being said, Federal jurisdiction over an Article 78 claim is not unheard of. In Yonkers Racing Corp. v. City of Yonkers, 858 F.2d 855, 865 (2d Cir. 1988), the Second Circuit upheld jurisdiction over such a cause of action due to the risk of conflicting orders and also because no one would lose any substantive rights due to Federal jurisdiction. (The cause of action was ultimately dismissed on the merits.) Accordingly, it is submitted that

the Court here has the authority to entertain the Article 78 cause of action and should to avoid inconsistent decisions.

Should the court decline jurisdiction over this matter, the appropriate remedy is to remand the cause of action to State Court for a determination on the merits, not dismissal.

## CONCLUSION

For the reasons set forth above, Defendants Motion to Dismiss should be denied in all respects and the Court should grant any other, further and different relief that it deems just and appropriate.

Dated: January 5, 2015

SCHOOL ADMINISTRATORS ASSOCIATION
 OF NEW YORK STATE
OFFICE OF GENERAL COUNSEL,
ARTHUR P. SCHEUERMANN

By:      Arthur P. Scheuermann, Esq.
         General Counsel
         8 Airport Park Blvd.
         Latham, New York 12110
         (518) 782-0600
         Bar Roll No. AS 5720

TO:    Lewis R. Silverman (LS9723)
       Rutherford & Christie, LLP
       Attorneys for Defendants
       369 Lexington Avenue, 8th Floor
       New York, New York 10017