UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL TWEED,

        Plaintiff,

  -against-

GLEN COVE SCHOOL DISTRICT, GLEN COVE
CITY SCHOOL DISTRICT BOARD OF
EDUCATION, and Maria Rianna, in her Official
Capacity as Superintendent as Schools,

        Defendants.
------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 14-4154

(Wexler, J.)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ SEP 29 2015 ★

LONG ISLAND OFFICE

APPEARANCES:

School Administrators Association of New York State
Office of General Counsel, Arthur P. Scheuermann
By: Arthur P. Scheuermann, Esq.
8 Airport Park Boulevard
Latham, NY 12110
Attorneys for Plaintiff

Silverman & Associates, LLP
By: Lewis R. Silverman, Esq.
445 Hamilton Avenue, Suite 1102
White Plains, New York, NY 10601
Attorneys for Defendants

WEXLER, District Judge:

      Plaintiff Michael Tweed ("Tweed" or "Plaintiff") brings this action alleging First Amendment retaliation. He brings four claims, asserting violations of his First Amendment rights under the U.S. Constitution and Article I of the New York Constitution, violations of his Fourteenth Amendment rights under 42 U.S.C. § 1983, violations of New York Civil Law § 75-b, and a claim under Article 78 that Defendants's conduct is arbitrary, capricious and violative of

-1-

the law. Defendants Glen Cove School District ("Glen Cove"), Glen Cove City School District Board of Education ("Board"), (collectively, the "District") and Maria Rianna, in Her Official Capacity as Superintendent as Schools, ("Rianna"), (collectively, "Defendants") move to dismiss the complaint pursuant to the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), Rule 12(c), claiming a failure to state a claim for which relief can be granted. For the reasons stated below, the Court grants Defendants' motion to dismiss Plaintiff's claim under Article 78 and denies Defendants' motion to dismiss all other claims.

## BACKGROUND

I. <u>Factual Background</u>

For purposes of this motion, the Court relies on the allegations of the amended complaint ("Cmplt."), which are summarized here. Plaintiff Tweed was hired effective July 1, 2011 as the Coordinator of Guidance and Pupil Personnel Service. Cmplt. ¶ 15. He took over a department that was in "disarray" and was charged with "fix[ing]" the department and to devise more ways for students to apply to college and obtain scholarships. Cmplt. ¶¶ 17-18. Due to his efforts, applications to colleges spiked, and at the end of his first year, Plaintiff was described by the then Superintendent, Dr. Joseph Laria, as an "extremely effective administrator" who had an "excellent year." Cmplt. ¶¶ 23-25.

Following his second year of employment, the 2012-2013 school year, his evaluation by the Assistant Superintendent Dr. Michael Israel stated "[t]his was a very good year! You have fulfilled your duties and responsibilities as Chairperson of Guidance and Pupil Personnel Services (PPS) in the Glen Cove School District in a professional manner." Cmplt. ¶ 26.

During that same 2012-2013 school year, the District conducted an internal investigation regarding testing illegalities, and during that investigation, Plaintiff learned that at least two transcripts of high school students were tampered with to enable them to graduate. Cmplt. ¶ 28. Plaintiff discovered the high school principal and assistant principal changed two students' classroom and/or Regents grades to enable them to graduate. Cmplt. ¶ 29. Plaintiff met with then-Superintendent Laria to share the information he discovered. Cmplt. ¶ 30.

In the Spring of 2013, Plaintiff cooperated with the District's internal investigation, with the assurance he would not suffer retaliation as a whistleblower. Cmplt. ¶ 31. Plaintiff also cooperated with the investigation launched by the Nassau District Attorney's Office. Cmplt. ¶ 35.

In the late Spring of 2013, Plaintiff learned that some District officials, employees and PTA representatives were trying to identify who was cooperating in the investigation, and that one or more Board member divulged confidential information about the investigation, including Plaintiff's identity and involvement. Cmplt. ¶¶ 36-37. Plaintiff was informed by at least one community member that certain members of the Board were upset about Plaintiff's cooperation with the investigation, and the high school principal, the assistant principal and PTA were "targeting" him because of his involvement. Cmplt. ¶¶ 38-39. On April 22, 2013 and May 24, 2013, Plaintiff, through his counsel, wrote letters to the Superintendent and Board respectively, reminding them of his status as a whistleblower. Cmplt. ¶¶ 41-42.

The internal investigation detailed "pervasive corruption" about grades and testing. The Nassau County District Attorney convened a grand jury, which it later disbanded. Cmplt. ¶¶ 43-45. In May 2013, Superintendent Laria was forced by the Board to resign, and the Board

President resigned over that summer. Cmplt. ¶¶ 46, 49. The high school principal was suspended, forced to retire and release his certifications. Cmplt. ¶ 50. The assistant high school principal was denied access to the computer system and negotiated a settlement of disciplinary charges and paid a fine. Cmplt. ¶¶ 51-52. In the fall of 2013, Newsday published the entire internal investigative report on its website. Cmplt. ¶ 53.

Before being forced to resign in May 2013, Superintendent Laria indicated that Plaintiff was on track for tenure. Cmplt. 54. In February 2014, despite the lack of any reported problems with his performance, Plaintiff was asked by the new Superintendent, Defendant Rianna that he take a fourth probationary year in exchange for releasing the District of all potential claims he might have, including for retaliation. Cmplt. ¶ 59.

When Plaintiff asked Dr. Israel about his tenure in February 2014, Israel said he did not know and would have to ask Rianna, which Plaintiff claims was unusual since Israel was Plaintiff's direct supervisor and responsible for reviewing him for tenure. Cmplt. ¶¶ 61-62. No other employee eligible for tenure was asked to take a fourth probationary year. Cmplt. ¶ 66. Plaintiff refused to accept the fourth probationary year in exchange for the release. Cmplt. ¶¶ 67-68.

By letter dated March 17, 2014, Plaintiff was advised he would not be recommended for tenure. Cmplt. ¶ 69. On May 5, 2014, the Board did not grant Plaintiff tenure. Since being denied tenure, Plaintiff has been identified in Newsday as the whistleblower. Cmplt. ¶ 78. Since he was identified as a whistleblower, Plaintiff alleges the Defendants have "blacklisted" him, and despite promising prospects, once calls are made, his efforts to find another job in his field have proven unsuccessful. Cmplt. ¶ 79.

Plaintiff brings four claims, asserting violations of his First Amendment rights under the U.S. Constitution and Article I of the New York Constitution, violations of his Fourteenth Amendment rights under 42 U.S.C. § 1983, violations of New York Civil Law § 75-b, and a claim under Article 78 that Defendants's conduct is arbitrary, capricious and violative of the law. Defendants move to dismiss under Rule 12(c).

## DISCUSSION

I. Standards on Motions to Dismiss

A motion to dismiss under Rule 12(c) is reviewed under the same standards that apply to a motion under Rule 12(b)(6).[1] Jenn-Ching Luo v. Baldwin Union Free School Dist., 2013 WL 6726899, *1 (2d Cir. 2013). All factual allegations are accepted as true, with all inferences to be drawn in favor of the plaintiff. Martine's Service Center, Inc. v. Town of Wallkill, 2014 WL 321943, *1 (2d Cir. 2014) (citations omitted). To survive the pleading stage, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," and must do more than conclusorily assert the elements of a cause of action. Schnitter v. City of Rochester, 2014 WL 494893, *1 (2d Cir. 2014), citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

II. The Present Motion

1. First Amendment Claim

To state a claim for retaliation for exercising First Amendment rights, the plaintiff must

---

[1]Defendants style this as a motion to dismiss under Rule 12(c). As noted, the standards are similar, and the Court has restricted its review here to the pleadings.

show 1) the speech was constitutionally protected; 2) he suffered an adverse employment action; and 3) there is a causal connection between the speech and the adverse action. Cotarelo v. Village of Sleepy Hollow Police Dept., 460 F.3d 247, 251 (2d Cir. 2006); Ramirez v. Hempstead Union Free School District, 33 F.Supp.3d. 158, 172 (E.D.N.Y. 2014) (citations omitted). The issue in this case is whether Plaintiff's speech was constitutionally protected.

As a public employee, Plaintiff's speech is protected by the First Amendment when he speaks as a citizen about matters of public concern. Garcetti v. Ceballos, 547 U.S. 410, 417 (2006); Weintraub v. Board of Educ. of City School Dist. of the City of New York, 593 F.3d 196, 200-201 (2d Cir. 2010) (other citations omitted). Garcetti held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S. at 421.

Thus, the question here is whether Tweed was speaking as part of his official duties when he reported to Superintendent Laria and otherwise participated in the investigation regarding the grading improprieties he discovered. Defendants claim that as Superintendent of Guidance and Pupil Personnel, he is responsible for ensuring that students are graded accurately. Plaintiff retorts that student grading is not part of his "official duties," and in fact, only the classroom teacher and building principal have authority over student grading.

The Court is mindful that this is a motion to dismiss and the Court must accept Plaintiff's allegations as true. The Second Circuit has stated that "whether a public employee is speaking pursuant to her [or his] official duties is not susceptible to a brightline rule." Ross v. Breslin, 693 F.3d 300, 306 (2d Cir. 2012). The Court notes that there is no record here upon which to base a

determination that the speech at issue here was expressed as part of Plaintiff's official duties (and not protected) or as a citizen (and thus protected). See Matthews v. City of New York, 488 Fed. Appx. 532, 533 (2d Cir. 2012) (reversed granting of motion to dismiss to permit a record to be developed to determine as a matter of law whether plaintiff spoke as part of his official duties). As the Second Circuit stated in Matthews, discovery concerning the nature of plaintiff's position, "the nature of the speech, and the relationship between the two" may be warranted. Id., at 533 (quoting Ross, 693 F.3d at 306). The Court finds such an inquiry is warranted here, and therefore denies Defendants' motion to dismiss. See also Ramirez, 33 F.Supp.3d at 173 (denying motion to dismiss where allegations sufficiently state that plaintiff's speech, as director of technology, about teachers using a computer program to inflate grades, was as a citizen and addressed a matter of public concern). Cf. Ross v. Breslin, 693 F.3d 300 (2d Cir. 2012) (summary judgment granted where record indicates that school district employee's speech was made in furtherance of her duties and thus not protected speech); Weintraub, 593 F.3d 196 (2d Cir. 2010) (summary judgment affirmed where plaintiff's filing of a grievance was part of his official duties and not protected speech).[2]

2. Claim under 42 U.S.C. § 1983 - Fourteenth Amendment

Plaintiff's second claim asserts that Defendants have violated his Fourteenth Amendment rights of equal protection and due process.

---

[2]Similarly, the Court finds that Plaintiff's complaint sufficiently states that the adverse employment action Plaintiff suffered was caused by his speech, and is not "too remote" in time, particularly since the adverse employment action taken was to deny tenure, which only occurs at a certain time in the school year, and is not an action that Defendants could have taken *vis-a-vis* this Plaintiff any earlier.

A. Equal Protection Claim

Plaintiff concedes that as a public employee he does not have a "class of one" claim, based on Engquist v. Oregon Dept't of Agr., 553 U.S. 591 (2008). Plaintiff argues instead that he is part of a class of more than one that was targeted by the District for their whistleblowing activities. Plaintiff also argues his equal protection claim is based on a selective enforcement theory, which requires that 1) Plaintiff was treated differently than others similarly situated, and 2) that the different treatment was based on an impermissible consideration, in this case, to punish Plaintiff for his exercise of his First Amendment rights, or with malicious or bad faith intent to injure a person. Fierro v. New York City Dept. Of Ed., 994 F.Supp.2d 581, 592-93 (S.D.N.Y. 2014). Plaintiff claims that none of the other tenure candidates were asked to take a fourth probationary year or denied tenure, and that this action taken against him was taken to punish him for exercising his First Amendment rights and done maliciously and in bad faith to harm him.

As in the cases cited by Defendants, this claim is one where the selective enforcement claim "coalesces" with the First Amendment claim. See Kempkes v. Downey, No. 07-CV-1298 (KMK)(GAY),2008 WL 852765, *6 (S.D.N.Y. March 31, 2008) (citing African Trade & Info. Ctr. v. Abromaitis, 294 F.3d 355, 363 (2d Cir. 2002) (holding that First Amendment and equal protection claims "coalesce" where alleged motive for disparate treatment is plaintiff's exercise of First Amendment rights); see also Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2004)). In Kempkes, the court found that "[w]here this is the case, the equal protection claim is dependent on the First Amendment claim; in other words, where the First Amendment claim has failed, the equal protection claim fails, too." Id., at 6. A similar connection is made here. As stated above,

since Plaintiff's First Amendment claim is sufficiently stated to survive the motion to dismiss, so too is Plaintiff's selective enforcement claim.[3]

B. Due Process Claim

Defendants argue that Plaintiff's due process claim fails because Plaintiff has no property interest in his employment with the District, and the argument that his right to his educational licenses has been deprived by the Defendants is insufficient. Defendants also argue that Plaintiff's "stigma plus" claim that he has a liberty interest in his reputation also fails, and that Defendants' conduct is not sufficiently "outrageous" to support a substantive due process claim.

i. Property Interest

It is well-settled, and Plaintiff admits, that he has no property interest in his employment. See Plaintiff's Memorandum of Law ("Pl. Mem.") at 13, citing Segal, 459 F.3d at 211. Yet, Plaintiff argues that he does have a property interest in his educational licenses, which have effectively been deprived him by nature of Defendants' attempts to besmirch his reputation and "blacklist" him from the field of public education. In support of this theory, Plaintiff relies on Mudge v. Zugalia, No. 13-CV-891, 2014 WL 2453353 (N.D.N.Y. June 2, 2014). There the court found plaintiff had adequately stated a procedural due process claim against the New York State Department of Education ("NYSDOE") defendants who allegedly persuaded school

---

[3]The Court acknowledges that within this Circuit, the law is unsettled on the issue of whether selective enforcement claims are permissible in the public employment context following Engquist. See Fierro v. New York City Dept. of Educ., 994 F.Supp.2d at 592 (citations omitted); Lener v. Hempstead Public Schools, 55 F.Supp.3d 267, 283 (E.D.N.Y. 2014). Because this is a motion to dismiss, and because the claim is tied to the First Amendment claim that survives, so too does this claim, without prejudice for Defendants to renew these arguments at a later date.

administrators not to hire plaintiff, finding this was the functional equivalent of revoking his license without due process. Id., 2014 WL 2453353, at *5  Yet, the court dismissed similar claims against the specific districts since their conduct only effected plaintiff's position in those specific districts and did "not deny plaintiff the opportunity to use his license elsewhere in the state." Id.

Accepting the allegations here as true and giving every inference to Plaintiff as required for a motion to dismiss, the Court finds that Plaintiff sufficiently states a claim that Defendants have effectively deprived Plaintiff the benefit of his license. In the complaint, Plaintiff alleges that after several "promising" interviews and efforts made on his behalf, all prospects for employment have been shut down as a result of the District's attempts to "blacklist" him for exposing the corruption that resulted in the resignation of a much-beloved school administrator. Cmplt. ¶ 79. While Defendants do not issue his license like the NYSDOE defendants in Mudge, accepting the allegations as true, these Defendants have effectively denied Plaintiff use of his license, and allegedly in districts beyond its own.  Therefore, Defendants' motion to dismiss the procedural due process claim is denied.

ii. Stigma Plus Claim

Plaintiff's stigma plus claim asserts that Defendants have deprived him of a liberty interest without due process of law. It is recognized in this Circuit that "a probationary employee can 'invoke the protections of the Due Process Clause' where that employee has suffered a loss of reputation 'coupled with the deprivation of a more tangible interest, such as government employment'" without adequate process. See Segal v. City of New York, 459 F.2d 207, 212 (2d Cir. 2006) (citing Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir. 2004) and DiBlasio v.

Novello, 344 F.3d 292, 302 (2d Cir. 2003)). To state such a claim, plaintiff must show: 1) the government made stigmatizing statements questioning plaintiff's "good name, reputation, honor, or integrity" or denigrating his professional competence in a way that creates a "significant roadblock" in plaintiff's continued ability to practice his profession; 2) the statements were made public; and 3) that "the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." Segal, at 212 (citations and internal quotations omitted). In the case of an at-will government employee, the availability of a reasonably prompt post-termination name-clearing hearing provides sufficient due process to defeat a stigma plus claim. Id., at 214.

Plaintiff sufficiently alleges that Defendants' derogatory statements were made public through leaks by the Board, through conversations with community members and his identity being disclosed in Newsday. Cmplt. ¶¶ 36-40; 78. Defendants' claim that the availability of an Article 78 proceeding sufficiently defeats Plaintiff's stigma plus claim, which, according to Plaintiff, is why his complaint includes a claim for an Article 78 review. See Pl. Mem., at 16.

The Court agrees with Plaintiff that discovery is warranted to determine whether the post-deprivation hearings available to Plaintiff are sufficient to defeat the stigma plus claim. See Segal, 459 F.3d at 218 (stigma plus claim defeated because the C–31 hearing available to plaintiff was an adequate post-deprivation hearing procedure to protect her reputational and professional interests; no need to address whether Article 78 proceeding was appropriate). Defendants' motion to dismiss this claim is denied.

iii. Substantive Due Process

A substantive due process claim lies where a plaintiff has alleged that the defendants

-11-

government's conduct is "so outrageously arbitrary as to constitute a gross abuse of governmental authority," Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 505 (2d Cir. 2001), or is "conduct that 'shocks the conscience.'" O'Connor v. Pierson, 426 F.3d 187, 203 (2d Cir. 2005). Assuming Plaintiff's allegations to be true – that because of Plaintiff's involvement in exposing grading improprieties, Defendants denied him tenure, publically reviled him, and blacklisted him from other employment – a substantive due process has been adequately stated. Therefore, Defendants' motion to dismiss this claim is denied.

### 3. Claim under New York Civil Service Act § 75-b

Defendants seek to dismiss Plaintiff's "whistleblower" claim under New York Civil Service Act § 75-b because Plaintiff fails to specifically allege the "law, rule or regulation" that was violated. The Court finds this argument unpersuasive.

New York Civil Service Act § 75-b prohibits a public employer from taking an adverse action against a public employee who reports either a "violation of law, rule or regulation," or an "improper government action," defined as a violation of "any federal, state or local law, rule or regulation." Specifically, it states that:

> A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information: (i) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action. "Improper governmental action" shall mean any action by a public employer or employee, or an agent of such employer or employee, which is undertaken in the performance of such agent's official duties, whether or not such action is within the scope of his employment, and which is in violation of any federal, state or local law, rule or regulation.

Assuming Plaintiff's allegations as true, the Court finds the claim is adequately stated.

Defendants' mandate that the complaint specify the "actual law, rule or regulation" is unnecessary. See Ramirez v. Hempstead Union Free School Dist., 33 F.Supp.3d at 170 (motion to dismiss claim denied even where plaintiff did not specify the actual law violated in connection with a grading improprieties). Plaintiff has sufficiently alleged that Defendants took action against him for disclosing at the very least, "improper governmental action," that in fact was investigated both internally and by the Nassau District Attorney's Office. That Plaintiff does not specify the particular "law, rule or regulation" violated by such conduct is not fatal to his claim. Defendants' motion to dismiss is denied.

4. Claim under Article 78

Plaintiff's fourth claim seeks a determination that Defendants' actions are "arbitrary, capricious and in direct violation" of law in accordance with Article 78 of New York's CPLR. Cmplt. ¶ 108. As stated above, Plaintiff brings this claim to support his stigma plus due process claim. See Pl. Mem., at 16. Despite what Defendants argue, Plaintiff's whistleblower claim under § 75-b does not preclude his claim under Article 78. Yan Ping Xu v. New York City Department of Health, 77 A.D.3d 40, 47, 906 N.Y.S.2d 222 (1st Dept. 2010).

More troubling to the Court is that such a claim is more properly heard in state court. This Court agrees with other courts who have spoken on the issue, stating, "'[a]n Article 78 proceeding is a novel and special creation of state law, and differs markedly from the typical civil action brought in [federal district court] in a number of ways,'" and that such "'proceedings were designed for the state courts, and are best suited to adjudication there.'" Morningside Supermarket Corp. v. New York State Dept. of Health, 432 F.Supp.2d 334, 347 (S.D.N.Y. 2006) (quoting Lucchese v. Carboni, 22 F.Supp.2d 256, 258 (S.D.N.Y.1998); other citations omitted).

The Court declines to exercise decline supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(c), and grants Defendants' motion to dismiss Plaintiff's Article 78 claim without prejudice, and with leave to re-plead them in state court.

The Court has considered Defendants' other arguments and finds them to be without merit.

## CONCLUSION

For the reasons stated above, the Court hereby grants Defendants' motion to dismiss Plaintiff's Article 78 claim, and denies Defendants' motion to dismiss in all other respects.

SO ORDERED.

s/ Leonard D. Wexler
_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       September 29, 2015